

# IN THE
## TENTH COURT OF APPEALS

No. 10-08-00035-CR

**SAMUEL GUTHRIE,**

                                           **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                           **Appellee**

---

### From the 40th District Court
### Ellis County, Texas
### Trial Court No. 28053CR

---

## MEMORANDUM OPINION

---

Appellant Samuel Guthrie was charged by indictment with the state jail felony offense of theft by check. *See* TEX. PEN. CODE ANN. § 31.03 (Vernon 2003). Pursuant to a plea agreement, Guthrie pleaded guilty, and the trial court assessed his punishment at 730 days' confinement and a $500 fine. The court then suspended the sentence and placed Guthrie on community supervision for three years. Condition number one of Guthrie's community supervision required that he "[c]ommit no offense against the

laws of this or any other State or of the United States; further, report to the Supervision Officer within 48 hours if arrested or questioned by a law enforcement officer."

The State subsequently filed a motion to revoke Guthrie's community supervision. The motion alleged that Guthrie violated condition one in that

> on or about April 16, 2007, in Ellis County, Texas, the said defendant did then and there unlawfully appropriate, by acquiring or otherwise exercising control over, property, to-wit: a 14-foot home-made flatbed trailer, from the person of John Paul Colwell, the owner thereof, with intent to deprive the owner of the property.

After a hearing, the trial court found that Guthrie had violated condition one, as well as three other conditions. The court then revoked Guthrie's community supervision and assessed his punishment at 730 days' confinement in state jail and a $500 fine.

In one issue, Guthrie contends that the trial court abused its discretion in revoking his community supervision. He argues that the State failed to prove each of the alleged violations by a preponderance of the evidence. Because there is sufficient evidence to show that Guthrie violated condition one of his community supervision as alleged in the State's motion to revoke, we need only address that issue. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); *Holmes v. State*, 752 S.W.2d 700, 701 (Tex. App.—Waco 1988, no pet.) ("One ground for revocation, if proven, is sufficient to revoke probation.").

Appellate review of an order revoking community supervision is limited to whether the trial court abused its discretion. *Forrest v. State*, 805 S.W.2d 462, 464 n.2 (Tex. Crim. App. 1991); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); *see also Maxey v. State*, 49 S.W.3d 582, 584 (Tex. App.—Waco 2001, pet. ref'd). An order

revoking community supervision must be supported by a preponderance of the evidence; in other words, that greater weight of the credible evidence that would create a reasonable belief that the defendant has violated a condition of his community supervision. *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974). The State is required to sustain the burden of proving the allegations of the motion to revoke community supervision. *Id.*; *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993).

The following relevant evidence was presented by the State at the hearing on the State's motion to revoke. John Colwell testified that he contacted the Waxahachie Police Department because he thought he spotted the fourteen-foot flatbed trailer that he had reported stolen from his storage facility one week prior. The trailer was underneath an unattached carport at 504 Oldham Street. Sergeant Rodney Guthrie testified that, after being contacted by Colwell, he and Sergeant Woodruff met Colwell at his storage facility. There, Colwell drew a sketch and gave them a detailed description of the trailer. Colwell and his father had built the trailer, and it had several distinctive features that other trailers did not have. Colwell testified that it was worth no less than $1,500.

Sergeant Guthrie and Sergeant Woodruff then went to 504 Oldham Street and talked to the resident, May Elaine Jeter. Sergeant Guthrie testified that when the police sergeants asked Jeter about the trailer, she told them that she and her boyfriend Guthrie had had the trailer for about a year. Jeter then allowed the police sergeants to go look at the trailer. Sergeant Guthrie stated that it was "an exact match" to the description and sketch given by Colwell. He thus called Colwell, who came to the location.

Sergeant Guthrie testified that when Colwell came to the location, he identified the trailer, as well as a piece of fence post underneath the storage shed at the back of the residence and two wooden blocks in the bed of the truck on the property that were his. Colwell testified that the trailer had also recently been painted black and a can of paint was still sitting on the trailer.

Sergeant Guthrie testified that they then confronted Jeter, and she changed her story. Sergeant Guthrie stated, "She explained that the trailer had appeared at the residence approximately two weeks prior. That [Guthrie] had brought it to the home sometime in the night, maybe after work." Jeter told Sergeant Guthrie that she asked Guthrie about the trailer but that he told her not to ask questions about it because it was "none of her concern." Jeter never said anything to Sergeant Guthrie about Guthrie having been given the trailer or having bought the trailer from someone else. Sergeant Guthrie and Sergeant Woodruff then took an affidavit from Jeter and got a warrant for Guthrie for theft of property valued at $1,500 or more but less than $20,000. *See* TEX. PEN. CODE ANN. § 31.03.

To refute the State's evidence, Guthrie presented the following relevant evidence at the hearing on the State's motion to revoke. Jeter testified that she had been married to Guthrie for three years and that their home address is 504 Oldham in Waxahachie. She stated that the trailer was brought to her home by a gentleman named Bookie Williams one night in April 2007. On the night the trailer arrived at the house, she heard a vehicle and went outside about twenty minutes later. Guthrie was outside with

the trailer. She asked him where he got it, and he told her that she "asked questions a lot," so she went back inside.

Jeter testified that the police came to her house a couple of weeks after the trailer showed up. She initially told them the trailer had been there for a year because she confused it with a trailer that she had gotten in a divorce settlement. She stated that, as far as she knows, Bookie brought the trailer to her house. Her truck was broken down at the time and would have been incapable of delivering the trailer to her home. Guthrie told her that he had bought the trailer from Bookie, and she had an original receipt that Guthrie gave to her after the police came to her house.

Likewise, Guthrie testified that he did not steal the trailer. He stated that he agreed to pay Bookie to help him work on his roof but, before the roofing job was completed, Bookie wanted Guthrie to advance him some money. Guthrie told Bookie that he could not do that, but he then agreed to let Bookie pawn the trailer to him. Guthrie testified that Bookie pulled the trailer from McClain Street to Guthrie's house on April 5. He stated that because he did not have anywhere to chain the trailer, they moved his son's truck in front of the trailer. He stated that the truck has a first gear, but not a second or third gear.

Guthrie testified that the trailer was painted black one or two days before Colwell and Sergeant Guthrie arrived at his house. He stated that his son had asked him if he could paint the trailer, and he allowed the trailer to be painted because the "time limit of the agreement" between Bookie and himself had passed.

Guthrie testified that he was at work when the police sergeants and Colwell had come by the house but that Sergeant Guthrie had left a card, and he had called Sergeant Guthrie as soon as he got home. He stated that he had asked Sergeant Guthrie to please contact him. Guthrie also stated that once he was arrested, his wife brought the receipt he had received from Bookie to the police station.

In a hearing to revoke community supervision, the trial court, as the fact finder, is the exclusive judge of the witnesses' credibility and the testimony's weight. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981). Therefore, the trial court was free to accept the testimony of Colwell and Sergeant Guthrie and reject the testimony of Jeter and Guthrie. *See id.* Thus, the trial court reasonably could have found by a preponderance of the evidence that Guthrie violated condition one of his community supervision as alleged in the State's motion to revoke, and the trial court did not abuse its discretion in revoking Guthrie's community supervision. We overrule Guthrie's sole issue and affirm the trial court's judgment.


                                        REX D. DAVIS
                                        Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Affirmed
Opinion delivered and filed October 28, 2009
Do not publish
[CR25]